IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CRAIG BOSTON,

    *Plaintiff*,

v.

PRIME CARE MEDICAL, INC., *et al.*,

    *Defendants*.

CIVIL ACTION
No. 17-5124

**PAPPERT, J.**                                                                                          June 18, 2018

**MEMORANDUM**

Plaintiff Craig Boston, a *pro se* inmate, sued Prime Care Medical, Inc., Doctor Victoria Gessner, Supervising Nurses Jessica Thomas and Alynn Zernhelt, and Nurses Pam Whittaker and Jennifer Sariego for negligence and allegedly providing inadequate medical care in violation of his rights under 42 U.S.C. § 1983 and the United States Constitution.[1] The Defendants filed a motion to dismiss which the Court grants, though Boston will be allowed to amend his Complaint consistent with this Memorandum.

I

A

Boston is an inmate at Bucks County Correctional Facility ("BCCF"). (Compl. at 1, ECF No. 1.) He claims that while incarcerated, he lost his job in the prison and began a self-imposed hunger strike on September 21, 2017. (*Id.* at 2.) He alleges that medical personnel at BCCF refused to monitor his body mass index or vital signs,

---

[1] In his Response, Boston voluntarily dismissed his negligence claim and claims against Jennifer Sariego. (Pl.'s Resp. in Opp. to Mot. to Dismiss at 7, ECF No. 15.)

despite having been informed that he was not eating. (*Id.*) Boston claims that he was found unresponsive on his cell floor on September 27 and that medical personnel resuscitated him. (*Id.* at 2–3.) After regaining consciousness, Boston claims that he was unable to move and had difficulty breathing. (*Id.*) Emergency medical technicians were called, but Boston alleges that Nurse Thomas withheld information from the technicians. (*Id.*) Boston does not specify what information Thomas withheld, but alleges she did so to cover up her failings as a supervisor to ensure that inmates receive adequate medical treatment. (*Id.*)

On October 9, 2017, Boston claims that he had not eaten for twenty days, despite having received medical attention thirteen days prior. (*Id.*) After complaining to a corrections officer that he had thrown up bile, was unable to swallow Tylenol and that he had a migraine, Boston was taken to the medical unit at BCCF. (*Id.*) Once there, he explained to Nurse Whittaker that he could not swallow, but claims that she began questioning him about the Tylenol that had not been prescribed. (*Id.* at 3–4.) Boston alleges that Whittaker sent him back to his cell despite having a high heart rate and blood pressure, and without examining or addressing his inability to swallow. (*Id.*)

The following day, Boston submitted a medical request slip to the BCCF warden complaining about his recent experiences with the prison's medical staff. Boston contends the warden responded on October 11, but claims that Thomas withheld information from the warden and omitted information from his medical records. (*Id.*) He does not specify what information was withheld or omitted.

On November 9, Boston was removed from his cell and moved to the restricted housing unit.[2] (Compl. Attach. Claim at 1, ECF No. 3.) After being moved, Boston alleges he began coughing up blood and was escorted to the medical unit. (*Id.*) Once there, Boston complained of pain in his ribs because the officers that removed him from his cell allegedly kicked and kneed him in his torso. (*Id.*) After his vital signs were taken, he was sent back to his cell. Later that day, medical personnel were called to Boston's cell because he was again coughing up blood. (*Id.*) Thomas checked on Boston but determined that he did not need to go to the hospital and could instead see a physician assistant the next day. (*Id.*) He was not examined by a physician assistant or doctor the following day, but after writing a medical request slip complaint, was scheduled for an appointment the following week. (*Id.* at 2.)

On November 15, Boston was taken to the medical unit where a physician assistant took his vital signs and answered his questions. (*Id.*) Boston alleges the physician assistant told Doctor Gessner about the pain he was experiencing in his ribs, but rather than ordering an X-ray, Gessner responded "There won't be an X-ray, his oxgen [sic] is fine, and even if his ribs are cracked we can't do anything." (*Id.*)

---

[2] Boston filed his Complaint on November 14, 2017. Eight days later, Boston filed a "Complaint Attachment Claim," which included new factual allegations against Thomas and Gessner. (ECF No. 3.) On January 29, 2018, the Defendants moved to dismiss all claims asserted by Boston in both his Complaint and "Complaint Attachment Claim." (ECF No. 14.) In analyzing the Defendants' Motion, the Court will consider the allegations in both the Complaint and "Complaint Attachment Claim," which in effect operates as an amended complaint. Though an amended complaint typically "supersedes the original and renders it of no legal effect," allegations contained in the original complaint maintain their legal effect if "the amended complaint specifically refers to or adopts the earlier pleading." *See W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (quoting *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (3d Cir. 1996)). Boston's "Complaint Attachment Claim" refers to his initial Complaint because, as the title of that document suggests, he attempted to attach an additional claim to his original Complaint. *See* (Compl. Attach. Claim, ECF No. 3). Boston's amended complaint must contain all claims and allegations against all defendants, including any claims he wishes to assert against Thomas and Gessner.

Boston claims the Defendants denied him adequate medical care and that he experienced physical and emotional pain, but does not allege that he suffered any physical injury as a result of the Defendants' purportedly inadequate medical treatment. (Compl. ¶¶ 6, 12; Compl. Attach. Claim at 1–2.)

B

Because Boston filed his complaint *pro se*, the Court "must liberally construe his pleadings." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citation omitted). "Courts are to construe complaints so 'as to do substantial justice,' keeping in mind that *pro se* complaints in particular should be construed liberally." *Bush v. City of Phila.*, 367 F. Supp. 722, 725 (E.D. Pa. 2005) (quoting *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004)). Moreover, in a § 1983 action, the Court must "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)); *see also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution." (citation omitted)).

II

A

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially

plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether a complaint will survive a motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

B

The Eighth Amendment's "prohibition against cruel and unusual punishment protects prisoners against the 'unnecessary and wanton infliction of pain.'" *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "The Cruel and Unusual Punishments Clause, however, does not apply until an inmate has been both convicted and sentenced for his crimes." *Bistrian v. Levi*, 696, F.3d 352, 366 (3d Cir. 2012) (citing *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989)). An inmate awaiting sentencing is protected by the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). In any event, "the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner[.]'" *Id.* (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

Boston's Complaint does not explain if he was incarcerated at BCCF pre–or post–conviction; therefore the Court does not know which theory applies to Boston's claim. In his amended complaint, Boston should clarify his prisoner status.

III

Boston contends that the Defendants violated his constitutional rights by failing to provide adequate medical treatment. *See* (Compl. at 2). To state an Eighth Amendment claim for inadequate medical care, Boston must make "(1) a subjective showing that 'the defendants were deliberately indifferent to [his] medical needs' and (2) an objective showing that 'those needs were serious.'" *Pearson v. Prison Health*

*Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

"It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" *Rouse*, 182 F.3d at 197. Rather, deliberate indifference "requires obduracy and wantonness...which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Id.* (citation and quotation omitted). Additionally, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *United States ex rel. Walker v. Fayette Cty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). The Third Circuit Court of Appeals has "found 'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197 (citations omitted).

A medical need is serious "where it 'has been diagnosed by a physician as requiring treatment' or is 'so obvious that a lay person would easily recognize the necessity' of medical attention." *Palakovic v. Wetzel*, 854 F.3d 209, 227 n.23 (3d Cir. 2017) (quoting *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). A serious medical need may also be established where the denial or delay "causes an inmate to suffer a life-long handicap or permanent loss" or causes needless

pain. *Monmouth Cty. Corr.*, 834 F.2d at 347; *see also Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003).

A

Boston sues Gessner, Whittaker, Thomas and Zernhelt in their individual capacities. (Compl. at 1–2; Compl. Attach. Claim. at 1–2.) "Individual, or personal, capacity suits seek to impose personal liability upon a government official for actions he takes under color of law." *Helm v. Palo*, No. 14-6528, 2015 WL 437661, at *9 (E.D. Pa. Feb. 3, 2015) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). To state an Eighth Amendment claim against the Defendants, he must demonstrate their personal involvement in the alleged violations of his constitutional rights. Section 1983 "liability cannot be predicated solely on the operation of respondeat superior." *Chimenti v. Pa. Dep't of Corrs.*, No. 15-3333, 2016 WL 1125580, at *5 (E.D. Pa. Mar. 21, 2016) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)). Brown can allege such personal involvement under either of two theories: (1) a supervisor's personal direction or actual knowledge and acquiescence in a constitutional violation, *id.* (quoting *Evancho*, 423 F.3d at 353); or (2) that a defendant, in his role as policymaker, acted with deliberate indifference in establishing a policy that directly caused the alleged constitutional violation, *Brown v. May*, No. 16-01873, 2017 WL 2178122, at *2 (E.D. Pa. May 17, 2017).

i

Boston alleges Gessner violated his constitutional rights when she decided not to X-ray him. (Compl. Attach. Claim. at 1–2.) Boston fails to state a claim against Gessner because the United States Supreme Court has made clear that "[a] medical

8

decision not to order an X-ray…does not represent cruel and unusual punishment. At most it is medical malpractice….” *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *see also Ruff v. Health Care Adm'r*, 441 Fed. App'x 843, 846 (3d Cir. 2011) ("Although it is unfortunate that Ruff's fractured rib went undisclosed for two years, P.A. Davis's medical choice to not order an x-ray…at most exhibits negligence, which is insufficient to state a cognizable Eighth Amendment claim."). Because malpractice does not constitute a violation of the Eighth Amendment, Boston's complaint fails to state a claim against Gessner.

ii

Next, Boston claims Nurse Whittaker violated his constitutional rights by sending him back to his cell without addressing his inability to swallow. (Compl., ¶ 9.) Assuming for purposes of this Motion that he had a serious medical need during his interaction with Whittaker, either because a lay person would recognize Boston's need of medical attention or because Whittaker's actions caused him needless pain,[3] Boston has not sufficiently alleged deliberate indifference.

In assessing deliberate indifference, "there is a critical distinction 'between cases whether the complaint alleges a *complete denial* of medical care and those alleging *inadequate* medical treatment.'" *Pearson*, 850 F.3d at 535 (quoting *United States ex. rel. Walker*, 599 F.2d at 575 n.2) (emphasis added). "[M]ere disagreement as to the

---

[3] Boston alleges that prior to seeing Whittaker, he threw up, was unable to swallow and had a migraine. (Compl. at 3.) It is unclear whether these medical needs would be obvious to a lay person or if they caused Boston needless pain. *See, e.g.*, *Hakeem v. Salaam*, 260 F. App'x 432, 435 (3d Cir. 2008) (affirming district court's determination that complaints of throat pain did not constitute serious medical need); *Boring v. Kozakiewicz*, 833 F.2d 468, 473–74 (3d Cir. 1987) (concluding that jury would not be in a position to conclude that migraine headaches could be classified as "serious," and expert medical opinion evidence would be necessary to establish the "seriousness" of that condition).

9

proper medical treatment" does not "support a claim of an eighth amendment violation." *Monmouth Cty. Corr.*, 834 F.2d at 346. Rather, "when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." *Pearson*, 850 F.3d at 535 (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990)). Boston's Complaint is ambiguous; he alleges Whittaker "never examined or address[ed] him being unable to swallow." (Compl. ¶ 9.) It is unclear whether Boston claims Whittaker never examined him at all, or whether Boston merely disagrees with the treatment he received. Either way, he fails to sufficiently allege that Whittaker was deliberately indifferent to a serious medical need.[4]

iii

Next, Boston alleges Nurse Thomas violated his Eighth Amendment rights by withholding medical information from emergency medical technicians and the warden.[5] (Compl. at 3–4.) He concludes that Thomas "omitted information to responding E.M.T.'s transporting [him]," and "omitted information from the warden," (Compl. ¶¶ 8, 10), but does not allege any facts to support this conclusion or render the claim plausible. *See Schuchardt*, 839 F.3d at 347. Moreover, Boston fails to identify how Thomas was deliberately indifferent to a serious medical need. Boston received medical

---

[4] Even if Boston received medical care from Whittaker, "there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements." *Palakovic*, 854 F.3d at 228. For example, prison officials may not "opt for 'an easier and less efficacious treatment' of the inmate's condition." *Id.* (quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978)). "Nor may 'prison authorities deny reasonable requests for medical treatment…[when] such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury.'" *Id.* (quoting *Monmouth County Corr.*, 834 F.2d at 246). Finally, "knowledge of the need for medical care [may not be accompanied by the]…intentional refusal to provide that care." *Monmouth County Corr.*, 834 F.2d at 246 (alterations in original) (quoting *Ancata v. Prison Health Servs.*, 769 F.2d 700, 704 (11th Cir. 1985)).

[5] Boston does not claim Thomas provided inadequate medical care when he coughed up blood. *See* (Compl. ¶¶ 8, 10).

treatment, and when care is provided, the Court presumes the treatment was proper. *See Pearson*, 850 F.3d at 535. Although there are "circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements," Boston has not alleged that Thomas refused to provide treatment, opted for an easier form of treatment, or that she denied a reasonable request for care that exposed him to suffering or injury. *Palakovic*, 854 F.3d at 228.

iv

Finally, Boston fails to state a claim against Nurse Zernhelt. Other than naming Zernhelt a Defendant and describing her position, Boston does not mention her again in his Complaint. *See* (Compl. ¶ 7.) He does not allege that Zernhelt was present when he received inadequate medical treatment, or that she directed or acquiesced in the violation of his constitutional rights. "Allegations of participation or actual knowledge and acquiescence…must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988); *see also Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) ("[T]he official must actually be aware of the existence of excessive risk; it is not sufficient that the official should have been aware."). Boston similarly fails to allege Zernhelt was a policymaker that acted with deliberate indifference in establishing a policy which directly caused a violation of his rights. The claim against Zernhelt in her individual capacity is dismissed without prejudice.[6]

---

[6] For the first time in his response, Boston alleges that Zernheld received numerous notifications about Boston not eating and his health. (Resp. at 6, ECF No. 15.) Boston may not assert new claims or rely on new facts in response to a motion to dismiss. *See Gueson v. Feldman*, No. 00-1117, 2002 WL 32308678, at *4 (E.D. Pa. Aug. 22, 2002) ("A plaintiff may not raise new claims in response to a motion to dismiss"); *Hammond v. City of Philadelphia*, No. 00-5082, 2001 WL 823637, at *2 (E.D. Pa. June 29, 2001) ("A party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion"). Boston's amended complaint must contain all claims and allegations against all defendants

B

Finally, Boston sues Prime Care and alleges that the company was responsible for providing healthcare services to prisoners at BCCF. (Compl. at 1.) To hold Prime Care liable under § 1983, Boston must show that it acted under color of law and that any constitutional violation arose from the company's official policy or custom. *Palakovic*, 854 F.3d at 232 (citing *Natale*, 318 F.3d at 583–84). A policy is made "when a decisionmaker possess[ing] final authority to establish…policy with respect to the action issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citation and quotation omitted). "A course of conduct is considered to be a 'custom' when, though no authorized by law, such practices…are so permanent and well settled as to virtually constitute law." *Id.* (citation and quotation omitted).

Boston fails to allege that he suffered a constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (explaining a municipality cannot be held liable under § 1983 if the plaintiff suffered no constitutional injury). Even if Boston had sufficiently alleged a constitutional violation, he has not identified any Prime Care policy or custom that caused that violation.

IV

"[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston*, 363 F.3d at 235; *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Here, Brown does

not request leave to amend. Under Federal Rule of Civil Procedure 15(a), however, "courts may grant…amendments 'when justice so requires.'" *Frasher v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004) (citing Fed. R. Civ. P. 15(a)). Boston may file an amended complaint consistent with this Memorandum by **July 16, 2018**.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.